UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES A. HARNAGE,<br>        Plaintiff,<br><br>        v.<br><br>JAMES DZURENDA, *et al.*,<br>        Defendants. | No. 3:14-cv-885 (SRU) |

### RULING ON DEFENDANTS' MOTION TO DISMISS

James A. Harnage commenced this civil rights action while incarcerated in the custody of the Connecticut Department of Correction. In the only remaining claim in his amended complaint, Harnage contends that the defendants—Commissioners James Dzurenda, Theresa Lantz, and Brian Murphy; and Deputy Commissioners Carol Salisbury, Robert Foltz, and Cheryl Cepelak—have violated his right to equal protection of the laws by failing to provide to male inmates the legal assistance in civil family matters that they provide to female inmates. The defendants move to dismiss the amended complaint on several grounds. They contend that Harnage has filed an action in state court that includes the same claim, that this action is time-barred, that the claims are frivolous, and that the defendants are protected by absolute and qualified immunity. They also move to dismiss for lack of standing, lack of personal jurisdiction, and improper service.[1] For the reasons that follow, the motion to dismiss is granted in part.[2]

---

[1] Although the defendants mention lack of personal jurisdiction and improper service as grounds for their motion, they do not brief those grounds. Accordingly, those grounds are abandoned. In any event, the docket reflects that defendants Dzurenda, Murphy, Foltz and Cepelak, the only defendants against whom the case will proceed, all returned signed waivers of service of summons forms. *See* Doc. ## 13, 14, 19.

[2] Harnage was granted an extension of time, until March 11, 2016, to respond to the defendants' reply brief. He has not done so. All Connecticut prisons participate in the Prisoner Electronic Filing Program under which prisoner documents are emailed to the court the same day

## I. Standard of Review

### A. Rule 12(b)(1)

When considering a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(1), the court must determine whether it has the statutory and constitutional power to adjudicate the case. *See McCrory v. Administrator of FEMA*, 600 F. App'x 807 (2d Cir. 2015) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). The plaintiff bears the burden of establishing that he has standing to prosecute his case. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). When considering a motion under Rule 12(b)(1), the district court accepts all undisputed factual allegations as true and draws all reasonable inferences in the light most favorable to the nonmoving party. In addition, the court may refer to documents and evidence outside the pleadings to the extent that those submissions address the allegations supporting jurisdiction. *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) ("In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both. . . . [W]here evidence relevant to the jurisdictional question is before the court, the district court may refer to that evidence." (quotation and modification omitted)).

### B. Rule 12(b)(6)

When considering a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003). The court

---

they are given to prison officials. *See* Standing Order on Prisoner Electronic Filing Program, Order No. CTAO-13-16. Thus, had Harnage given a brief to prison officials by the date specified it would have been received and filed on that date.

considers not whether the plaintiff ultimately will prevail, but whether he has stated a claim upon which relief may be granted so that he should be entitled to offer evidence to support his claim. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

In reviewing the complaint in response to a motion to dismiss, the court applies "a 'plausibility standard,' which is guided by two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the requirement that the court accept as true the allegations in the complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Even under this standard, however, the court liberally construes a *pro se* complaint. *See Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013).

**II.     Facts**

The following facts, taken from the amended complaint, relate to the equal protection claim in Count One, the only remaining count. *See* Doc. # 9 (noting that case will proceed against defendants Dzurenda, Lantz, Murphy, Salisbury, Foltz, and Cepelak on the equal protection claim in Count One only).

Harnage was incarcerated in June 2008. In September 2008, he became a party in an action for dissolution of marriage, and his divorce became final in April 2009. The action dealt with child custody and visitation issues as well as the division of marital assets. In December 2010, Harnage's parental rights were terminated. At the time of his incarceration, Harnage was

subject to a restraining order and protective order preventing him from communicating with his children. Those orders remain in place. Harnage alleges that he was unable to defend himself in the family court proceedings. He was denied access to legal research materials and did not understand the legal processes.

During the times relevant to this action, the Department of Correction afforded inmates their right of access to the courts through the Inmates' Legal Assistance Program. As part of that program, the defendants contracted with a private law firm to provide legal assistance to inmates incarcerated in Connecticut prisons. Under the contract, legal assistance with civil family matters has been provided to female inmates but not to male inmates.

**III. Discussion**

Harnage argues that the defendants have violated his right to equal protection of the laws by creating a program that denied him legal assistance and representation in civil family matters because of his gender.

A. Representing Other Inmates

In his amended complaint, Harnage purports to assert claims on behalf of all male inmates. *See* Doc. # 10 at 5, ¶ 38 ("The defendants['] discrimination of plaintiff, and all other male inmates in the denial of benefits and services of the state funded ILAP violates the state and federal constitutional right to equal protection."). Harnage is proceeding *pro se*, and a *pro se* litigant can represent only himself. *See Berrios v. New York Hous. Auth.*, 564 F.3d 130, 133 (2d Cir. 2009). Accordingly, Harnage cannot presently assert any claims on behalf of other inmates. The defendants' motion to dismiss is granted without prejudice with respect to any claims asserted on behalf of others.

B. Additional Materials

The defendants have filed a motion to dismiss accompanied by many affidavits and exhibits. Harnage also has submitted affidavits and exhibits with his memorandum in opposition to the motion. When considering a motion to dismiss under Rule 12(b)(6), the court considers only the allegations in the amended complaint and matters of which judicial notice may be taken. *See Garanti Finansal Kiralama A.S. v. Aqua Marine and Trading Inc.*, 697 F.3d 59, 63 n.4 (2d Cir. 2012). If I were to consider the affidavits and exhibits, I would be required to convert the Rule 12(b)(6) motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d) (providing that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment…"). I decline to do so. Accordingly, I will consider only the allegations in the amended complaint and matters of which I may take judicial notice when reviewing the motion to dismiss under Rule 12(b)(6).

C. Standing

The defendants argue that Harnage lacks standing to claim that the defendants have deprived him of his right to equal protection of the laws. Standing relates to the subject matter jurisdiction of the court, and a motion to dismiss for lack of standing is therefore properly brought under Rule 12(b)(1). *See ED Capital, LLC v. Bloomfield Investment Resources Corp.*, __ F. Supp. 3d __, 2016 WL 112389, at *9 (S.D.N.Y. Jan. 5, 2016) (citing *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 114 (2d Cir. 2002)). The Second Circuit has stated that the district court should consider a challenge to subject matter jurisdiction before addressing other grounds for dismissal. *See Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

To establish standing, the plaintiff must satisfy three elements: (1) "a concrete and particularized invasion of a legally protected interest;" (2) "a causal connection between the invasion and the alleged injury;" and (3) "likelihood that the injury will be redressed by a favorable decision." *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 343 (2d Cir. 2015) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. That provision "bars the government from selective adverse treatment of individuals compared to other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)). One such "impermissible consideration" is gender. *See Morales-Santana v. Lynch*, 804 F.3d 520, 527–28 (2d Cir. 2015) (considering and applying intermediate or heightened scrutiny to equal protection claim based on gender discrimination); *see also Doe v. Hagenbeck*, 98 F. Supp. 3d 672, 681 (S.D.N.Y. 2015) (Equal Protection Clause "confers a 'federal constitutional right to be free from gender discrimination'") (quoting *Davis v. Passman*, 442 U.S. 228 (1979)). To state an equal protection claim, the plaintiff must allege "that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).

Harnage alleges that he continues to be subject to a restraining order and protective order prohibiting communication with his children that he needs legal assistance to challenge or modify. He further alleges that as a result of his gender he is denied the benefit of legal

6

assistance in civil family matters that the Department of Correction provides to female inmates (and only female inmates). The difference in treatment is based on gender, which is an impermissible criterion. As a male inmate, Harnage is a member of the disadvantaged group. Thus, Harnage has standing to bring his equal protection claim.

The defendants argue that Harnage has no injury-in-fact and therefore lacks standing because he is a prolific *pro se* litigant who is adept at navigating the courts, and because under *Lewis v. Casey*, 518 U.S. 343 (1996), he needs to show actual injury in the form of inability to file a lawsuit. Those arguments are unavailing. The inmates in *Lewis* asserted that the lack of resources and support available to them denied them their right of access to the courts, *id.* at 346, and did not raise an argument that they were denied support that other inmates received on the basis of an impermissible criterion.[3] And Harnage's abilities, whatever they may be, do not alter the fact that representation and legal assistance are provided for female inmates only. The defendants have not claimed that a similarly-situated female inmate, on the basis of being a prolific *pro se* litigant, would be similarly denied legal assistance in civil family matters. The injury-in-fact required to support an equal protection claim based on unequal treatment "is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Credico v. New York State Bd. of Elections*, 2013 WL 3990784, at *7

---

[3] Although not cited by the defendants, a closer case to this one is *Smith v. Armstrong*, 968 F. Supp. 40 (D. Conn. 1996). In *Smith*, a class of male inmates challenged the legal services provided by Inmates' Legal Assistance Program, the same legal services provider at issue in this case. The complaint contained two counts. In the first count, the inmates argued that the failure to provide effective and meaningful legal services violated their rights to due process and access to courts under the First and Fourteenth Amendments. In the second count, the inmates claimed that by providing different, and more effective, legal services to female inmates, the defendants violated their right to equal protection under the Fourteenth Amendment. *Id.* at 49. In evaluating the plaintiffs' standing to bring the challenge, the court focused on whether the plaintiffs had suffered an actual injury to state a claim for denial of access to the courts. *Id.* at 47–49. Finding that the plaintiffs had not been able to assert actual injury, the court concluded that they lacked standing to bring their suit, *id.* at 49, and found no need to address the equal protection claim. *Id.*

(E.D.N.Y. Aug. 5, 2013) (quoting *Able v. United States*, 88 F.3d 1280, 1291 (2d Cir. 1996)) (internal quotation marks omitted) (action for damages challenging election law requirement that candidate's name appear only once on the ballot). However capable Harnage might be to litigate on his own behalf, or however unlikely he might be to fare better in his civil family matters with the same benefit female inmates receive, he still alleges a concrete injury in the form of a gender-based denial of services that he wishes to use to address a civil family matter. To survive the motion to dismiss on the basis of standing to bring his equal protection claim, he must allege only that he is a member of the disadvantaged group, that there is a government-erected barrier, and that, as a result of the barrier, the members of one group are considered differently from members of the other. *Id.* (quoting *Comer v. Cisneros*, 37 F.3d 775, 793 (2d Cir. 1994)). He has done that, and he therefore has standing to proceed.

   D.  Statute of Limitations

The defendants next argue that I should adhere to the conclusion in the Initial Review Order that the claims are time-barred. In the Initial Review Order, I noted that the proceedings pertaining to Harnage's divorce and to the termination of his parental rights terminated in 2009 and 2010, and that any claim arising from a denial of legal services relating to those proceedings appeared to be time-barred. I dismissed this claim without prejudice to repleading facts to support equitable tolling of the limitations period. Doc. # 6. In his amended complaint, Harnage alleges that he continues to be subject to a restraining order and protective order prohibiting communication with his children, but he makes no allegations suggesting that the limitations period for any claim specifically based on the 2009 divorce or 2010 termination of parental rights should be tolled. Any claim specifically relating to a denial of legal assistance in

connection with those two closed proceedings is therefore time-barred, as I concluded in the Initial Review Order.

Additionally, all of the remaining defendants are named as either Commissioner or Deputy Commissioner, and any claims against them therefore presumably accrued while they were serving in those positions. The Department of Correction website shows that defendant Lantz served as the Commissioner of Correction from 2003 through 2009.[4] Defendant Salisbury served as Deputy Commissioner from 2003 through 2010.[5] Thus, any actions relating to Harnage's allegations that defendants Lantz and Salisbury would have taken in their capacities as Commissioner and Deputy Commissioner—whether entering a contract for legal assistance or perpetuating a policy of providing different services for male and female inmates—would have ended no later than 2009 or 2010. All claims against defendants Lantz and Salisbury are therefore dismissed as time-barred.

Harnage has, however, identified a claim that may be timely. The record does not indicate the age of Harnage's daughter or the accrual date for his claimed right to contact her as an adult to determine whether she wished to communicate with him. The Department of Correction continues to deny legal assistance or representation to male inmates on that issue. Harnage's claim may be construed to assert that the remaining defendants, in their capacity as high-ranking correctional officials, annually renewed the contract for legal services including the denial of equal services for male and female inmates, thereby denying him equal protection. Thus, I cannot conclude on a motion to dismiss that the claims against defendants Dzurenda, Murphy, Foltz and Cepelak are time-barred. The defendants' motion is denied without prejudice on the ground that the claims against those three defendants are time-barred.

---

[4] http://www.ct.gov/doc/cwp/view.asp?a=1500&q=269990 (last visited Mar. 24, 2016).
[5] http://www.ct.gov/doc/cwp/view.asp?a=1500&q=269992 (last visited Mar. 24, 2016).

E.  Prior Pending Action and *Colorado River* Abstention

The defendants contend that Harnage cannot pursue the same claims in state and federal court and therefore argue that I should abstain from hearing this case. The mere existence of parallel litigation in state in federal court, however, is not sufficient to justify abstention, which is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (citing *Cnty. of Alleghany v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)). The U.S. Supreme Court has cautioned that "abdication of the obligation to decide cases can be justified . . . only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Cnty. of Alleghany*, 360 U.S. at 188–89. Nevertheless, in certain "exceptional circumstances, a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in comprehensive disposition of litigation and abstention would conserve judicial resources." *Colorado River*, 424 U.S. at 817 (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)); *Niagara Mohawk Power Corp. v. Hudson River–Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (citations and internal marks omitted).

When determining whether to abstain under *Colorado River*, the factors a federal court must consider are: (1) whether the controversy involves a *res* over which one of the courts has assumed jurisdiction; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the actions were filed and the relative progress of the two proceedings; (5) whether federal law provides the rule of decision; (6) whether the state court will adequately protect the rights of all parties and (7) whether the federal filing was vexatious (*i.e.*, intended to harass) or reactive (in response to adverse rulings in the state court). *Colorado River*, 424 U.S. at 818–19 (internal citations omitted); *Moses H. Cone Mem. Hosp. v.*

*Mercury Const. Corp.*, 460 U.S. 1, 16 (1983); *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001). A district court must weigh each factor "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16.

The first two factors are neutral or do not apply: This is not an *in rem* action and no property is the subject of it, and pursuing this case in federal court rather than state court presents no undue inconvenience to the parties. Where a factor is neutral, the factor weighs in favor of the retention of jurisdiction by the federal court. The avoidance of piecemeal litigation may weigh lightly against retaining jurisdiction, because allowing the federal action to proceed may result in the same facts and issues being litigated in state and federal court.

The order of filing and relative progression of cases is less clear. A state action seeking injunctive relief was filed first, and the state court has denied a motion for summary judgment and awaits the plaintiff's third amended complaint. *See Harnage v. Schulman*, No. KNL-CV12-5914356-S, Order No. 207.01, filed January 22, 2016. Despite the later filing in federal court, this court has expended substantial time and resources on the initial review of the complaint and deciding this motion. A second state case seeking damages was filed after the defendants filed the motion to dismiss in this case. The defendants have appeared but taken no other action in the second state case. I conclude that the order of filing and relative progress of the cases does not clearly weigh in either direction.

The fact that a decision on the merits will be governed by federal law weighs strongly against abstention. The only remaining claim in this case is a federal equal protection claim. The presence of a federal issue weighs heavily in favor of retaining jurisdiction. *See Village of Westfield v. Welch's*, 170 F.3d 116, 124 (2d Cir. 1999). The last two factors are as neutral or

11

inapplicable as the first two: I can discern no reason why the state court cannot adequately protect Harnage's rights, and I see no reason to believe that the federal filing was intended to harass the defendants or undermine any state rulings.

In sum, I conclude that the defendants have not demonstrated exceptional circumstances that would warrant declining jurisdiction. *See Colorado River*, 424 U.S. at 817 (noting that the pendency of an action in state court generally does not bar a similar action in federal court so judicial economy is insufficient to warrant declining jurisdiction; federal courts have "virtually unflagging obligation" to exercise jurisdiction).

F. <u>Merits of Equal Protection Claim</u>

The defendants argue that Harnage's equal protection rights were not violated. They correctly assert that they are not required to provide access to the courts in any particular manner. *See Bounds v. Smith*, 430 U.S. 817, 830–32 (1977) (identifying several acceptable means to provide access to courts and encouraging experimentation). Nothing in *Bounds*, however, sanctions the violation of the Equal Protection Clause by providing different services based on impermissible classifications. I cannot conclude, at this stage of the proceedings, that Harnage fails to state an equal protection claim.

The defendants argue further that, even if I were to find an equal protection violation, Harnage would not prevail. They contend that I must apply the balancing test set forth in *Turner v. Safley*, 482 U.S. 78 (1987). Application of that test, however, would require consideration of material outside of the pleadings. I have declined to convert this motion to dismiss to a motion for summary judgment. Accordingly, the defendants' motion is denied on this ground without prejudice to the defendants' revisiting the issue on a properly filed motion for summary judgment.

Finally, the defendants contend that the horrific nature of Harnage's crime renders any expectation of visitation with his children delusional. In response, Harnage states that one daughter, whom he did not sexually assault, is now an adult. The restraining order and protective order prevent him from contacting her to see if she is interested in pursuing a relationship with him. The defendants may be right to consider such interest unlikely, but I cannot conclude as a matter of law that such a request is delusional—and, again, Harnage's likelihood of prevailing in his civil family matters does not conclusively determine whether a gender-based denial of legal assistance to pursue them constitutes an equal protection violation. I decline to dismiss the case as frivolous.

G. Absolute Immunity

The defendants argue that they are absolutely immune from suit because they only provided additional services to female inmates in compliance with the Consent Judgment in *West v. Manson*, No. H-83-366(AHN) (D. Conn. Oct. 13, 1988). I take judicial notice of that consent judgment. *See* Defs.' Mem. Attachment 9, Aff. of Warden Stephen Faucher, Ex. A, Doc. #30-10 at 8–80. In that case, the plaintiffs were inmates confined at the Connecticut Correctional Institution at Niantic (now the York Correctional Institution)—the only Connecticut correctional facility housing female inmates. The judgment states its provisions are not to be construed as statements or rulings regarding the rights of inmates confined at any other correctional facility. Doc. # 30-10 at 1–2, ¶ 3.  In the section dealing with court access, the defendants agreed to provide one full-time attorney to represent female inmates in family matters including divorce, child custody and DCF proceedings as well as adequate transportation to court.  Doc. # 30-10 at 75.

13

At the time the Consent Judgment was entered the Department of Correction contracted for legal services for all inmates in civil matters including divorce, support, custody, termination of parental rights and paternity actions. *See Smith v. Armstrong*, 968 F. Supp. 40, 42 n.4 (D. Conn. 1996) (setting forth provision included in the July 1, 1991 through June 30, 1992 contract). The contract for provision of legal services was subsequently awarded to a different vendor and the contract was revised to provide legal assistance, but not representation, and to restrict the types of cases for which legal assistance was provided. *Id.* at 46.

The defendants argue that they are protected by absolute immunity for their actions in implementing and enforcing the Consent Judgment, because judicial immunity is extended to include those who carry out judicial orders. *See Maldonado v. New York County Sheriff*, 2006 WL 2588911, at *5–6 (S.D.N.Y. Sept. 6, 2006) (citing cases). The issue in this case, however, is not the enforcement of the provisions of the Consent Judgment. The fact that the defendants obligated themselves to provide services for women does not grant them license (and it certainly does not obligate them) to violate the Equal Protection Clause. The issue in this case is the withholding from male inmates services that are provided to female inmates, irrespective of the source of the decision or obligation to provide them to anyone. Because enforcement of the Consent Judgment is not the issue in this case, the defendants are not protected by absolute immunity.

H. Qualified Immunity

The defendants also argue that their actions are protected by qualified immunity. Government officials are protected from liability for damages by qualified immunity unless they violate "a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (quoting *Reichle v.*

*Howards*, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks omitted). A right is clearly established if the "right is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* A proper application of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011)) (internal quotation marks omitted).

The defendants cite *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013), for the proposition that I should afford deference to the district court's assessment of the fairness of the class action settlement in *West*. In *Charron*, however, the Second Circuit was considering the fairness of the settlement to the class members, not to non-parties. The issue before me here is not whether the provisions of the *West* Consent Judgment are fair to female inmates but whether the policies instituted by the Department of Correction subsequent to the Consent Judgment denied equal protection to male inmates such as Harnage.

As noted above, at the time the Consent Judgment was entered, the Department of Correction contracted for legal services for all inmates in civil matters including divorce, support, custody, termination of parental rights and paternity actions. *See Smith*, 968 F. Supp. at 42 n.4. Subsequently, the contract for provision of legal services was awarded to a different vendor and the contract was revised to provide legal assistance, but not representation, and to restrict the types of cases for which legal assistance was provided. The proper question, therefore, is not whether a reasonable correctional official would understand that complying with the Consent Judgment was reasonable, but whether eliminating services for male inmates while continuing to provide them for female inmates was constitutional. No reasonable correctional official could understand that providing legal services to female inmates while denying the same

15

services to male inmates treats inmates equally regardless of gender. I conclude that the defendants are not protected by qualified immunity.

## I. Harnage Fails to Satisfy Requirements for Issuance of Injunction

The defendants argue that Harnage fails to satisfy the requirements to issue an injunction. Harnage seeks only damages in this action. Thus, the defendants' argument is immaterial.

## J. Claims for Money Damages

In their reply brief, the defendants contend that the state court already has decided the money damages claim. I disagree. The state court determined that sovereign immunity barred any damages claim against the Department of Correction absent authorization from the Claims Commissioner. *Harnage v. Schulman*, 2013 WL 7020540, at *2–3. No individual correctional officials were named as defendants. The state court has not addressed the merits of any claims for damages against individual officials.

The defendants also contend that the defendants are named in their individual capacities but the plaintiff fails to allege any individual actions that would warrant an award of damages. But he is not required to do so. State officials named in their individual capacities may be held personally liable for actions taken in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991).

## IV. Conclusion

The defendants' motion to dismiss [Doc. #30] is GRANTED without prejudice with respect to all claims asserted on behalf of other inmates, and with prejudice with respect to any claim made in connection with the 2009 divorce and 2010 termination of parental rights, and all claims against defendants Lantz and Salisbury. The motion is DENIED in all other respects.

So ordered.

Dated at Bridgeport, Connecticut, this 28th day of March 2016.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
